Lockett *vs.* de Neufville *et al.*

BENJAMIN G. LOCKETT, plaintiff in error, *vs.* JACOB DE-NEUFVILLE *et al.*, defendants in error.

1. The statute (Code section 3266) requiring bond from the plaintiff in attachment, with good security, in an amount at least double the debt sworn to, contemplates, not only that the bond shall be for that amount, but that the security shall be good for the like amount. It is not the purpose of the statute to exact bond in double the debt and security for less; nor is it the province of the officer who takes the bond and judges of the security, to conjecture what may be the probable, or the possible, limit of the defendant's damages. He is authorized to accept no bond for a less amount than double the debt, nor any security except security good for at least that amount.

2. In a proceeding under the act of 1873, (Code, section 3271) to verify the sufficiency of the bond, and to have it made good, if not so already, the officer is to be governed by a like standard of security, and to pronounce none sufficient which is not good for an amount double the debt.

3. In that proceeding no question of amendment can be entertained, except amendment of the bond, and of that only in so far as may be necessary to make it conform to law as a bond in support of the attachment as originally issued and levied.

4. If, in such proceeding, an order to make the bond good, be not complied with within the time prescribed, the proper final order is one declaring the plaintiff's default, and directing the levying officer to dismiss the levy. To order that the attachment and the levy be dismissed, is error.

Attachment. Bond. Amendment. Before Judge WRIGHT. Dougherty County. At Chambers. June 3d, 1875.

Reported in the opinion.

B. H. HILL & SON; SMITH & JONES, for plaintiff in error.

JOSEPH GANAHL; WARREN & HOBBS, for defendants.

Lockett *vs.* de Neufville *et al.*

BLECKLEY, Judge.

Judge Strozer of the Albany circuit issued an attachment in favor of the plaintiff in error against the defendants in error, for three quarters of a million of dollars.  After it was levied, a proceeding took place before Judge Wright, the successor or Judge Strozer, to verify the sufficiency of the plaintiff's bond, in the mode prescribed by the act of 1873, (Code, section 3271.) In the course of that proceeding Judge Wright held that the bond was not sufficiently secured, and ordered that additional security be given within a prescribed time, so as to make the bond secure, to at least the amount of the debt sworn to.  Compliance with this order was attempted, on the part of the plaintiff, but at the final hearing, the Judge decided that he had failed to comply, and ordered that the attachment and the levy thereon be dismissed.

It is not pretended that the security was good for double the debt sworn to, and therefore, in the view we take of the case, it is quite immaterial whether the Judge ruled correctly or not in holding that because of the want of full ratification by one of the sureties whose name was signed by his attorney in fact, or for any other reason, the bond was not well secured to the extent of the amount of the debt only.   If in trying to follow one error the judge committed another, the result ought to be accepted if it be a correct result ; and we think that the rejection of this bond was proper, because it did not come up to the standard of security which the *law* lays down, whether it came up to the different and lower standard laid down by the *judge* or not.

1. The Code declares, section 3266, that "the party seeking the attachment, before the same issues, shall also give bond, with good security, in an amount at least double the debt sworn to, payable to the defendant in attachment, conditioned to pay such defendant all damages that he may sustain, and also all costs that may be incurred by him in consequence of suing out the attachment in the event the plaintiff shall fail to recover in said case." This provision is perfectly plain.

Its obvious meaning is that the bond must be for at least double the debt, and, when for the minimum amount, that the security must be good for the whole bond, not for part of it only. There is no hint that the bond is to be for one amount and the security good for another amount. Double the debt is made the standard for both. Either of them, if the plaintiff choose, may go above; there is no limit in that direction; but neither can fall below. Double the debt, at least, is the stern mandate of the law, and plaintiffs in attachment must comply with it or forbear the use of this remedy. The legislature grants the remedy on terms, and whoever will not or cannot comply with these terms must look to the other modes provided by the law for prosecuting their rights. The giving, not only of bond, but of good security, in double the amount of the debt sworn to, is a condition precedent to the issuing of attachment. And that condition the officer to whom application is made for the writ, has no right to waive or relax. Nor has he any right to speculate upon the probable or the possible limit of the defendant's damages. It is not for him to foresee what property will be levied upon, how long the litigation will linger, or what may be the consequences, in any respect, of the proceeding. The law trusts him with no such questions. It is said that the object of the bond is indemnity only. That is true; but what will be indemnity has been settled by the legislature. According to the plainly declared will of the legislature a defendant in attachment is entitled to be indemnified against damages and costs by bond and good security to the extent of double the debt sworn to. It may be that no case will ever happen which, in the actual damages sustained and costs incurred, will exhaust all the indemnity which the law affords; but such a case might happen, and whether it might or not, no less indemnity than that prescribed, can be forced upon a party by any court or officer. Were the reasonableness of the law in question, it might be urged in favor of it, that the plaintiff is burdened with giving good security once for all, and that security, worth twice the debt when the attachment was sued out, may, by changes and

Lockett de Neufville *et al.*

losses during protracted litigation, be worth much less than the actual damages in the end. There is no provision for exacting new security, from time to time, as the old may fail. One of the risks, therefore, to be covered by the high security demanded at first, is a change, by lapse of time, in the resources of those who become bound on the plaintiff's bond.

2. In the scrutiny of the bond provided for by the act of 1873, the officer is to work to one end only, and that is, if the bond and security be not already such as they ought to have been when the attachment issued, to have them made so. The same standard of security is still before him, and he has no right to vary it. He should pronounce no security sufficient which is not good for double the debt sworn to.

3. In the present case the plaintiff being unable to satisfy the judge with the security, proposed, by way of amendment to his attachment and declaration, to reduce the debt to $100,-000 00, and presented an amendment to that effect, with an offer to allow the bond and security already given to stand, or give a new bond with ample security in the sum of $200,-000 00. To see that anything like this was quite aside from the object and purpose of the business in hand, it is only necessary to remember that the judge was sitting at chambers, as the officer who had issued the attachment with powers no more ample than a justice of the peace or a notary public would have had under the like circumstances. He could not act upon the attachment or upon the declaration in any manner whatever. His business was with the bond; and with it for the sole purpose of making it conform to the law as a bond in support of the attachment as issued and levied. Amendment of the bond to that extent, or the acceptance of a new bond, if in the proper amount and well secured, would have been within his functions; but beyond this, he had no concern with amendment or with substitution. The business in hand was to bring the security up to the attachment, not to carry the attachment down to the security.

4. In conformity to this view of the judge's functions, we hold that, while he did not err in rejecting the bond, he did

err in ordering that the attachment and the levy thereon be dismissed. The only· final order which can be passed, on failure of the plaintiff to comply within the time prescribed by the previous order, is one declaring the plaintiff's default, and directing the levying officer to dismiss the levy. Such an order is proper, although not expressly provided for by the statute, which, itself directs the levying officer to dismiss the levy in default of the plaintiff's compliance. But the levying officer should have some authoritative evidence that the time has come for him to dismiss, and, to that end, an order declaring the default and instructing him to dismiss the levy is appropriate. Let such an order be passed in the present case, unless the plaintiff, within such reasonable time as the judge, in his discretion, may prescribe, shall give a proper attachment bond, with security, good for double the amount of the debt sworn to.

Judgment reversed.